IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

NANCY PETRUSICH,                            3:12-cv-00779-BR

        Plaintiff,

                                      OPINION AND ORDER

v.

UNUM LIFE INSURANCE COMPANY
OF AMERICA,

        Defendant.

**MEGAN E. GLOR**
**JOHN C. SHAW**
Megan E. Glor, Attorneys at Law PC
621 S.W. Morrison
Suite 900
Portland, OR 97205
(503) 223-7400

        Attorneys for Plaintiffs

**WILLIAM T. PATTON**
Lane Powell, PC
601 S.W. Second Avenue
Suite 2100
Portland, OR 97204-3158
(503) 778-2100

        Attorneys for Defendant

**BROWN, Judge.**

This matter comes before the Court on Plaintiff Nancy Petrusich's Motion (#29) for Summary Judgment and Defendant Unum Life Insurance Company's Motion (#37) for Summary Judgment.  The parties filed under seal the Stipulated Administrative Record (AR)(#19).

The Court heard oral argument on August 22, 2013.  At the conclusion of oral argument the Court requested the parties to submit additional briefing as to (1) which party has the burden to develop the record at the administrative level and (2) the scope of the Court's authority to remand to the plan administrator a case brought under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001, *et seq*.  The parties filed their supplemental briefs on September 9, 2013, and the Court took the Motions for Summary Judgment under advisement.

For the reasons that follow, the Court **GRANTS** Petrusich's Motion (#29) for Summary Judgment and **DENIES** Unum's Motion (#37) for Summary Judgment.


<u>**BACKGROUND**</u>

**I.    Petrusich's Claims**

Petrusich asserts a claim against Unum under ERISA. Pursuant to 29 U.S.C. § 1332(a)(1)(B), Petrusich seeks to recover from Unum unpaid Long Term Disability (LTD) benefits under the

2 - OPINION AND ORDER

LTD Plan purchased by CRESA Partners, Petrusich's former employer.

## II.    Pertinent Facts

The following facts are undisputed unless otherwise noted:

Petrusich was employed by CRESA Partners as a principal project manager.  On approximately April 18, 2011, Petrusich left work due to an alleged disability.  Petrusich was diagnosed with, among other things, anxiety, depression, adjustment disorder, delayed-onset post-traumatic stress disorder (PTSD), normacelmic hyperparathyroidism, and osteopenia.  On approximately May 10, 2011, Petrusich submitted an application to Unum for LTD benefits pursuant to the Plan.

### A.    The Plan

The Plan defines "disability" as:

> You are disabled when Unum determines that:
>
>> – You are <u>limited</u> from performing the <u>material and substantial duties</u> of your <u>regular occupation</u> due to your <u>sickness</u> or <u>injury</u>; and
>>
>> – You have a 20% or more loss in your <u>indexed monthly earnings</u> due to the same sickness or injury.
>>
>> \* \* \*
>>
>> You must be under the regular care of a physician in order to be considered disabled.

AR at 140 (emphasis in original).

"Regular occupation" is defined in the Plan as "the occupation you are routinely performing when your disability begins.  Unum will look at your occupation as it is normally performed in the national economy, instead of how the work tasks are performed for a specific employer or at a specific location." AR at 157.  The Plan contains a 90-day elimination period, which is the length of time that a claimant must be disabled before he/she is eligible to receive benefits.  AR at 140.

The Certificate Section of the Plan provides:  "When making a benefit determination under the policy, Unum has discretionary authority to determine your eligibility for benefits and to interpret the terms and provisions of the policy."  AR at 136. The Plan also has a discretionary clause that provides:

> The Plan, acting through the Plan Administrator, delegates to Unum and its affiliate Unum group discretionary authority to make benefit determinations under the Plan . . . .  Benefit determinations include determining eligibility for benefits and the amount of any benefits, resolving factual disputes, and interpreting and enforcing the provisions of the Plan.  All benefit determinations must be reasonable and based on the terms of the Plan and the facts and circumstances of each claim.
>
> Once you are deemed to have exhausted your appeal rights under the Plan, you have the right to seek court review under Section 502(a) of ERISA of any benefit determinations with which you disagree.  The court will determine the standard of review it will apply in evaluating those decisions.

AR at 164.

4 - OPINION AND ORDER

**B.   Petrusich's Application for LTD Benefits**

In her May 10, 2011, application, Petrusich and CRESA Partners identified her duties as follows:  (1) manage, plan, and coordinate activities to ensure that project goals are accomplished within the prescribed timeframe and funding parameters; (2) review project proposals to determine timeframe, funding limitations, and allotment of resources; (3) establish work plan and staffing for each project phase; (4) in larger organizations, may have the responsibility of managing supervisors assigned to projects; (5) confer with project staff to outline work plan and assign duties, responsibilities, and authority; (6) may manage subcontractors and their workers; (7) direct and coordinate project personnel to ensure that project progresses on schedule and within budget;  (8) review status reports and modify schedules; (9) prepare reports for management and clients; (10) assist clients, including real-estate agents and brokers, in solving their real-estate needs in a specific area such as listing, selling, leasing, or appraisal of commercial or residential property;  (11) research, analyze, market, or negotiate the lease or sale of real estate.  AR at 61-62, 338-39, 871-73.

**C.   Unum's Denial of Plaintiff's Application**

In a September 28, 2011 letter, Unum denied Petrusich's claim for LTD benefits.  Unum advised Petrusich in the denial

5 - OPINION AND ORDER

letter that:  "Your symptoms appeared to be in the mild to
moderate range given that you have not required the use of
psychotropic medications . . . .  The paucity of notes and lack
of medications suggests that your symptoms were not that
pervasive and could be monitored concurrent with employment."
AR at 691.  Unum concluded the medical evidence did not support
Petrusich's claim of an impairing disability of a psychiatric
nature after four to six weeks from the time Petrusich stopped
working on April 18, 2011.  According to Unum, therefore,
Petrusich did not meet the 90-day elimination period.  AR at 691-
92.

On October 10, 2011, Petrusich submitted to Unum a pre-
litigation appeal of Unum's decision denying her LTD claim.  In a
January 31, 2012, letter, Unum informed Petrusich that it denied
her pre-litigation appeal and affirmed its decision denying her
LTD claim.  In that letter Unum noted even though Petrusich's
doctors opined she was not well enough to return to work, Unum's
"psychiatrist review concluded that the medical evidence did not
support that [Petrusich] was impaired enough from a psychiatric
standpoint to be unable to work."  AR at 899-900.  Unum stated in
the letter that:

> The psychiatrist review concluded that the
> medical information showed you had a job
> specific conflict and you chose not to return
> to your regular occupation.  The notes
> demonstrated that you were able to function
> in recreational and personal activities and

> are able to go on a month-long trip to New
> Zealand.  You indicated you were having
> cognitive difficulties but mental status
> examinations were not consistent with severe
> and pervasive anxiety or marked cognitive
> impairment.

AR 899.

If Unum had approved her claim, Petrusich's gross monthly LTD benefit under the Plan would have been $4,494.68 reduced by any deductible sources of income.

## STANDARDS

### I.   Summary Judgment in ERISA Cases

Although this matter is before the Court on cross-motions for summary judgment, the usual summary-judgment standard under Federal Rule of Civil Procedure 56 is not the appropriate standard in an ERISA action.  When reviewing a benefit plan's decision to deny benefits, "a motion for summary judgment is merely the conduit to bring the legal question before the district court and the usual tests of summary judgment, such as whether a genuine dispute of material fact exists, do not apply." *Bendixen v. Standard Ins. Co.*, 185 F.3d 939, 942 (9th Cir. 1999).

### II.   Standard of Review

Review of an ERISA plan administrator's decision to grant or to deny ERISA benefits is reviewed *de novo*.  *Salomaa v. Honda Long Term Disability Plan*, 642 F.3d 666, 673 (9th Cir. 2011).

*See also Kearney v. Standard Ins. Co.*, 175 F.3d 1085, 1095 (9th Cir. 1999).  A plan may be subject to a more lenient standard of review, however, if the plan "unambiguously gives the administrator discretion to determine eligibility." *Salomaa*, 642 F.3d at 673.  *See also Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989).

Even when a plan provides an unambiguous grant of discretion to the administrator, a heightened standard may be required because of the administrator's conflict of interest.  *Salomaa*, 642 F.3d at 673.  The Supreme Court has held a conflict of interest should be considered "as a factor in determining whether the plan administrator has abused its discretion." *Metropolitan Life Ins. Co. V. Glenn*, 554 U.S. 105, 108 (2008)(citing *Firestone*, 489 U.S. at 115).  An apparent conflict is present when a plan administrator is responsible for both funding and paying claims.  *Glenn*, 554 U.S. at 108.   See also *Salomaa*, 642 F.3d at 674.  The weight of this factor depends on the likelihood that the conflict impacted the administrator's decisionmaking. *Stephan v. Unum Life Ins. Co. of Am.*, 697 F.3d 917, 929 (9th Cir. 2012).

Even when a conflict of interest exists, "a deferential standard of review remains appropriate." *Salomaa,* 642 F.3d at 674.  In other words, a "plan administrator's interpretation of the plan will not be disturbed if reasonable" even when a

conflict of interest exists.  *Id.* at 675 (citing *Conkright v. Frommert*, 130 S. Ct. 1640, 1651 (2010)).

The reasonableness of a plan administrator's decision to deny benefits must be viewed with skepticism, however, when a conflict of interest exists.  *Salomaa,* 642 F.3d at 676.  To determine the reasonableness of the plan administrator's decision, the Ninth Circuit has adopted a modified abuse-of-discretion standard.  *See id.*  The court must consider "whether application of a correct legal standard was '(1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from the facts in the record.'"  *Id.* (quoting *U.S. v. Hinkson*, 585 F.3d 1247, 1262 (9th Cir. 2009)(*en banc*)).


### DISCUSSION

**I.   Standard of Review in This Matter**

As noted, the presence of a discretionary clause in a plan generally requires review for an abuse of discretion.  Here it is undisputed that the Plan grants the requisite discretion to the Plan Administrator.  Petrusich argues Unum's discretionary clause, however, violates the Oregon Insurance Code (OIC), Or. Rev. Stat. § 742.005, because the OIC does not permit discretionary clauses in insurance policies, and, therefore, the proper standard of review is *de novo*.  In the alternative, Petrusich argues the Court should apply heightened scrutiny

9 - OPINION AND ORDER

because Unum's structural conflict of interest[1] resulted in a breach of Unum's fiduciary duty to Petrusich.

The Court concludes, however, that it need not determine whether a *de novo* or a heightened abuse-of-discretion standard of review is warranted in this case.  Viewing the facts in the light most favorable to Unum, the Court concludes that, even under a deferential abuse-of-discretion standard, Unum's evaluation of the record on which it based its denial was a cursory, superficial paper review.  As discussed below, the insufficiency of Unum's review is evidenced by the numerous errors and misstatements that Unum's reviewing physician made when citing to the record, Unum's disregard of evidence in the record that supports Petrusich's disability, and Unum's failure to assess Petrusich's condition in the context of her ability to perform her position.

Accordingly, the Court concludes even under the most deferential review (and, therefore, under either standard of review) the record does not support Unum's denial of Petrusich's claim.

## II.  Proof of Petrusich's Disability

"Plaintiff bears the burden to establish that she is disabled and, therefore, is entitled to benefits."  *Torres v.*

---

[1]  The parties do not dispute Unum has a structural conflict of interest because it acts as both the funding source and the Plan administrator.  *See Salomaa*, 642 F.3d at 674.

*Reliance Std. Life Ins. Co.*, 551 F. Supp. 2d 1221, 1228 (D. Or. 2008), *rev'd on other grounds,* 319 Fed. App'x 602 (9th Cir. 2009).

Here the Plan explicitly required Petrusich to provide proof of her alleged disability by showing, among other things, that she was under the regular care of a physician, the date her disability began, the cause of her disability, and the extent of her disability (including restrictions and limitations preventing her from performing her regular occupation). AR at 131. Petrusich asserts she met her burden because she provided her medical records and physicians' statements to Unum, and those records proved from the time she left work on April 19, 2011, she was "limited from performing the material and substantial duties of [her] regular occupation due to sickness" and, therefore, was disabled under the terms of the Plan. *See* AR at 140. The Court agrees.

## A.   Petrusich's Treating Physicians

The record reflects Petrusich's treating physicians confirmed her disability at the time she left work in April 2011 through the 90-day elimination period necessary to qualify as "disabled" under the Plan.

### 1.   Victorya Khary, M.D.

On April 26, 2011, Petrusich's internist, Victorya Khary, M.D., gave Petrusich a primary diagnosis of anxiety and

11 - OPINION AND ORDER

secondary diagnoses of depression/insomnia and possible hyper-parathyroidism.  Dr. Khary advised Petrusich to stop working.  AR at 69-70.

### 2.   Leasia Cleary, L.C.S.W.

Petrusich's therapist, Leasia Cleary, L.C.S.W., treated Plaintiff from April 26, 2011, through December 20, 2011.  AR at 534-43, 821-59.  On April 27, 2011, Dr. Cleary gave Petrusich a primary diagnosis of "Adjustment Disorder w/ Mixed anxiety and Depressed mood" and noted:  "[A]nxiety and depression are greatly impacting sleep and concentration."  AR at 72.

In correspondence with Unum, Cleary repeatedly opined Plaintiff was not fit to return to work.  Dr. Cleary noted in a July 23, 2011, letter to Unum that she was treating Petrusich for "309.81 PTSD" and opined Petrusich's symptoms of "intense anxiety, hypervigilance, and depressive symptoms" precluded Petrusich from working "in such a high stress, triggering environment."  AR at 399.  Dr. Cleary noted Petrusich's "inability to organize her thoughts, concentrate on one task, and her intense hypervigilance would prevent her from doing her work effectively."  *Id*.  Dr. Cleary also stated Petrusich "is tearful often, and is having some vegetative signs of depression that are impacting her sleep, and her self-care."  *Id*.

In a September 1, 2011, letter to Unum, Dr. Cleary again explained Petrusich was being treated for "309.81 Post-

12 - OPINION AND ORDER

Traumatic Stress Disorder."  Dr. Cleary noted Petrusich "often
speaks rapidly, is most frequently on the verge of tears . . . .
At present, therapy is focusing on helping [Petrusich] manage her
triggers, and improve her over-all [*sic*] functioning.  Nancy
should not go back to the stressful work environment in [*sic*]
which she left."  AR at 561-62.

    In December 2011 Dr. Cleary confirmed Petrusich's
continuing disability and stated:  "[Petrusich] will not be able
to return to her past employment, and is also unable to return to
the same type of high profile, demanding position.  She simply
would not be able to handle that level of stress, or emotional
triggers . . . .  [N]ot much has changed other than [Petrusich's]
improved ability to cope with her symptoms."  AR at 811.

    **3.    Cheryn Grant, D.O.**

    Petrusich's psychiatrist, Cheryn Grant, D.O.,[2] saw
Petrusich for monthly treatment between June 2011 and November
2011 and confirmed Plaintiff's disability.  AR at 484, 651, 766-
86.  On June 22, 2011, Dr. Grant gave Plaintiff a primary
diagnosis of "PTSD, delayed onset," an Axis III diagnosis of
hyperparathyroidism, and a diagnosis of "work family, legal
and memories of past trauma" on Axis IV.  AR at 329.  Dr. Grant
opined in an August 28, 2011, letter to Unum that Plaintiff met

    [2]  Dr. Grant is "Board Certified in Adult Psychiatry and in
Child & Adolescent Psychiatry by the American Board of Psychiatry
& Neurology."  AR at 366.

the "PTSD criteria" and could not perform her regular work because "[h]er job includes interacting with people, making major contract decisions, and planning and negotiating contracts with multiple agencies.  She is unable to perform these tasks as she can't organize her thoughts coherently under stress and is so emotionally fragile that the least amount of pressure causes her to burst into tears."  AR at 484.

In September 2011 Dr. Grant responded "yes" to an inquiry from Unum's reviewing physician, Kevin Hayes, M.D., as to whether Petrusich had an impairing psychiatric condition.  AR at 651.

During the appeal process in December 2011, Dr. Grant told Unum's reviewing physician, Peter Brown, M.D., that she did "not believe [Petrusich] would be able to manage the ordinary day-to-day stressors of work in an appropriate manner."  AR at 840.  In response to the question "How are you measuring progress and the ability to return to work?," Dr. Grant responded:  "I would assume [Petrusich] is able to [return to work] when she doesn't need to check with several people to make a simple decision – needs reassurance it's okay.  Also when she no longer cries for no reason & her voice stops quivering while talking."  AR at 652.

### 4.    Priya Krishnamurthy, M.D.

In November 2011 Petrusich's endocrinologist, Priya

14 - OPINION AND ORDER

Krishnamurthy, M.D., confirmed Petrusich's Graves disease exacerbated her psychological symptoms.  AR at 796. Dr. Krishnamurthy noted Petrusich's main problem was "work related stress induced depression and anxiety" that "resulted in the escalation of her psychological issues including PTSD which reduced her from being a highly[-]productive individual to someone who has had to take leave from work."  *Id.* Dr. Krishnamuthy added:  "There is no question that the impairment of her cognitive function and depression/PTSD were contributed to by the Graves disease which is [*sic*] turn was triggered to a significant degree by her work[-]related psychological stress."  *Id*.

   **B.  Petrusich's Employer**

   In addition to her physicians' opinions that she could not perform her job, on at least three occasions CRESA Partners told Unum that Petrusich could no longer perform her job.  *See* AR at 191, 485, 493-94.  For example, in an August 29, 2011, letter to Unum, Craig Reinhart, CRESA Partners' Managing Partner, stated: "Nancy was and I believe is in no condition to work in corporate real estate . . . .  The current Nancy cannot function in our industry."  AR at 493.

   Based on its review of the medical evidence in this record, the Court concludes Petrusich sufficiently supported her claim of disability.  The record reflects at or around the time that

15 - OPINION AND ORDER

Petrusish left work in April 2011, she was diagnosed with, among other things, anxiety, depression, and PTSD and she was being treated through the Plan's 90-day elimination period.  The record shows Petrusish was under the regular care of several physicians who all opined Petrusich's symptoms were severe enough to be considered disabilities and rendered her unable to perform the specific tasks of her regular occupation.  This opinion was supported by Petrusich's employer, who agreed Petrusich could no longer do her job.

## III. Unum's Review of Petrusich's Claim

Although the insured carries the burden of showing she is entitled to benefits, ERISA administrators have a fiduciary duty to conduct an adequate investigation when considering a claim for benefits.  *Cady v. Hartford Life & Accidental Ins. Co.*, 930 F. Supp. 2d 1216, 1226 (D. Idaho 2013)(citing *Booton v. Lockheed Med. Ben. Plan*, 110 F.3d 1461, 1463 (9th Cir. 1997)).  *See also Rasenack v. AIG Life Ins. Co.*, 585 F.3d 1311, 1324 (10th Cir. 2009).  "This requires that the plan administrator engage in 'meaningful dialogue' with the beneficiary.  If the administrator 'believes more information is needed to make a reasoned decision, they must ask for it.'"  *Cady,* 930 F. Supp. 2d at 1226 (quoting *Booton*, 110 F.3d at 1463).  A plan administrator may not "shut [its] eyes to readily available information when the evidence in the record suggests that the information might confirm the

16 - OPINION AND ORDER

beneficiary's theory of entitlement." *Rodgers v. Metropolitan Life Ins. Co.*, 655 F. Supp. 2d 1081, 1087 (N.D. Cal. 2009)(citations omitted).

**A.    Summary of Unum's Review**

On June 16, 2011, Louis Gallo, R.N., C.C.M., one of Unum's senior clinical consultants, reviewed Petrusich's records and concluded: "None of the office visit notes from the claimant's providers . . . clearly demonstrate a level of impairment that would impair the claimant for more than 4-6 weeks."  AR at 310.

Kevin Hayes, M.D., a Unum medical consultant, also reviewed Petrusich's file and concluded Petrusich's "psychiatric symptoms would not be supported as impairing the 4-6 weeks from the time she stopped working. . . .  Her symptoms appear to be in the mild to moderate range given that she has not required the use of psychotropic medications. . . .  [T]he paucity of notes and lack of medications suggest that her symptoms are not that pervasive and she could be monitored concurrent with employment."  AR at 404.

In September 2011 after receiving updated records from Petrusich's physicians, Dr. Hayes confirmed his earlier opinion: "The level of care is not commensurate with severe psychopathology as certified by the [treatment] providers. Furthermore, the claimant is demonstrating a significant level of activity, which also suggests her symptoms are in the mild range

17 - OPINION AND ORDER

and not pervasively impairing." AR at 672.

Keith A. Caruso, M.D., an independent consulting physician, was also hired by Unum to review Petrusich's file. In July 2011 Dr. Caruso concluded: "In my opinion, the records do not reflect the level of psychiatric impairment suggested by [Petrusich's attending physician], and therefore I concur with [Dr. Hayes]." AR at 410. Like Dr. Hayes, Dr. Caruso concluded the fact that Petrusich was not taking medication was "inconsistent with the treatment plan for a severe case of PTSD or another impairing psychiatric condition." AR at 410. After reviewing updated medical records in September 2011, Dr. Hayes noted Petrusich's diagnoses of PTSD was sufficiently supported. Nevertheless, Dr. Hayes affirmed his earlier opinion because "the contemporaneous [office visit notes did] not reflect the same severity described in the treatment summaries." AR at 680.

Unum again reviewed Petrusich's file on appeal. As part of the appeal process, Unum had two additional physicians, Peter Brown, M.D., and Costas Lambrew, M.D., review Petrusich's file. Drs. Lambrew and Brown also concluded Petrusich was not disabled. *See* AR 868-69.

### B. Unum's Review Was Inadequate

#### 1. Unum's Reviewing Physicians Misstated the Record

As noted, Dr. Hayes based his conclusion that Petrusich was not disabled in part on her perceived "activity level."

Dr. Hayes noted inaccurately that Petrusich was "involved in some activities with an import business and construction of a property" and had been "traveling to Hawaii on vacation."  AR at 672.  As Petrusich points out, however, the only reference to an import business in the record is a note from Dr. Cleary about Petrusich's anxiety after being in a crowded Asian import store. AR at 570-71.  Furthermore, the only reference in the record to a construction project is also in Dr. Cleary's notes where she noted Petrusich was in tears after being yelled at by a construction worker in front of Dr. Cleary's office building.  AR at 570-72.

As for Dr. Hayes's statement about a trip to Hawaii, the record reflects Petrusich discussed with Dr. Cleary a trip to Hawaii that triggered Petrusich's memory of a sexual assault that occurred when she was in her twenties.  *See* AR 604.  Petrusich contends this trip occurred before she left work in April 2011. Pl.'s Memo. at 35.  Thus, nothing in the record supports Dr. Hayes's conclusion that Petrusich took a trip to Hawaii after her date of alleged disability.

Another misstatement made by Unum's physicians and again by Unum in its September 2011 denial letter is that Petrusich "infrequently" attended psychotherapy.  AR 404, 410, 672, 680, 691.  The record, however, reflects Petrusich was seeing Dr. Cleary weekly for therapy and was seeing Dr. Grant

"every few weeks for supportive therapy." AR 562, 671. This hardly qualifies as "infrequent."

Unum concedes the statements about the import business and construction project were inaccurate, but Unum contends those misstatements are not material because it did not base its decision on them. This, however, does not appear to be the case. Dr. Hayes based his opinion in part on Petrusich's "activity level" and pointed out these inaccurate "activities." Dr. Hayes's misstatements were then repeated verbatim in a September 21, 2011, "final addendum review" by Denise Chamberland, a lead disability-benefits specialist for Unum who subsequently concluded Petrusich's claim should be denied. AR at 703. In any event, the Court concludes these inaccurate statements support the conclusion that Unum conducted a superficial and cursory review rather than performing an adequate investigation of Petrusich's claim as required by law.

## 2.    Unum Failed to Investigate the Medication Issue

As noted, Unum based its denial of Petrusich's claim in part on the fact that she was not taking medication to manage her condition. AR at 691 ("[L]ack of medications suggests that your symptoms were not that pervasive and could be monitored concurrent with employment.").

The record reflects, however, Petrusich's refusal to take medication was not because her symptoms were not severe

20 - OPINION AND ORDER

enough but because she believed she was highly sensitive to medications. *See* AR at 483, 562. In fact, Dr. Grant wrote in August 2011 that Petrusich's condition was severe enough to warrant her taking medications, but she "still doesn't want them because she feels they will make her ill." AR at 483-84. Dr. Grant again wrote to Unum in September 2011 clarifying that Petrusich's refusal "to take medications is not the same as not requiring psychotropic medication" and "[l]ack of medications is due to her fear of them and not due to having few symptoms." AR at 578-78.

The record also reflects Petrusich opted for alternative therapies such as weekly therapy, yoga, and meditation instead of medications. Drs. Cleary and Grant supported these therapies and noted Petrusich was benefitting from them. AR at 562, 841, 848.

Although Unum based its denial on the fact that Petrusich was not taking medication, nothing in the record shows Unum investigated her alleged sensitivity to medications. In any event, even if Petrusich were able to take medication, her doctors clearly stated she would still not be able to return to work. The record does not reflect Unum looked into this issue, and, therefore, the record does not support Unum's conclusion that Petrusich would have been able to return to work if she had taken medication.

21 - OPINION AND ORDER

The Court concludes Unum's disregard of the record and its failure to look into this issue, particularly in light of its conclusion that Petrusich was not disabled in part because she was not taking medication, also supports the conclusion that Unum did not perform an adequate investigation of Petrusich's claim as required by the law.

### 3.  Unum Did Not Order an Independent Medical Examination

Petrusich also contends Unum abused its discretion because it conducted only a "paper review" of her file and failed to conduct an independent medical examination (IME).

A plan administrator is not required to examine the claimant. *Kushner v. Lehigh Cement Co.,* 572 F. Supp. 2d 1182, 1192 (C.D. Cal. 2008)("ERISA also does not require that an insurer seek independent medical examinations."). Nevertheless, one factor that courts consider when determining if a plan administrator abused its discretion, particularly in cases where the administrator has a conflict of interest, is whether the plan administrator conducted only a paper review of the claimant's file. *Salomaa*, 642 F.3d at 676 ("An insurance company may choose to avoid an independent medical examination because of the risk that the physicians it employs may conclude that the claimant is entitled to benefits. The skepticism we are required to apply because of the plan's conflict of interests requires us to consider this possibility in this case."). *See also Montour v.*

22 - OPINION AND ORDER

*Hartford Life & Acc. Ins. Co.*, 588 F.3d 623, 630 (9th Cir. 2009)("Other factors that frequently arise in the ERISA context include the quality and quantity of the medical evidence, whether the plan administrator subjected the claimant to an in-person medical evaluation or relied instead on a paper review of the claimant's existing medical records."); *Calvert v. Firstar Fin., Inc.*, 409 F.3d 286, 295 (6th Cir. 2005)("We find that the failure to conduct a physical examination . . . may, in some cases, raise questions about the thoroughness and accuracy of the benefits determination.").

In *Salomaa* the claimant's treating physicians opined he was disabled.  The plan administrator conducted only a paper review and did not have the claimant examined.  642 F.3d at 676 ("The only documents with an 'M.D.' on the signature line concluding that he was not disabled were by the physicians the insurance company paid to review his file.  They never saw [the claimant].").  The Ninth Circuit held the plan administrator abused its discretion when it denied the claim in part as the result of failing to have the claimant examined.  *Id.* at 676, 680-81.

As noted, it is undisputed that Unum has a structural conflict of interest because it acts as both the funding source and Plan Administrator.  It is also undisputed that Unum did not conduct an IME of Petrusich even after Petrusich appealed Unum's

23 - OPINION AND ORDER

initial denial.  In its final denial letter to Petrusich, Unum
stated:  "You have also made complaints of cognitive impairment,
however, there is no documentation of this and it appears you
have not completed any testing to substantiate this." AR at 692.
As noted, Unum concluded Petrusich's symptoms were not disabling
as illustrated by her failure to take medication.  An independent
examination, however, could have confirmed or denied these
conclusions.  Despite the fact that its physicians disagreed with
Drs. Cleary and Grant (who both opined Petrusich was disabled and
could not return to work), Unum chose to rely exclusively on a
paper review of Petrusich's file (which, as noted, was
inaccurate) rather than conduct an IME to support its reviewing
physicians' conclusions.

Nevertheless, Unum contends it was not required to perform
an IME and that it was Petrusich's burden to request an IME.  The
Court agrees that ERISA does not require a plan administrator to
conduct an IME.  This does not, however, mean there are not
circumstances under which a plan administrator *should* conduct an
IME.  Here Petrusich contended cognitive impairments were the
cause of her disability and rendered her unable to perform her
occupation.  The Court has concluded there was sufficient
evidence in the record to support Petrusich's contentions,
including the opinions of her treating physicians.  Under the
circumstances, Unum had a fiduciary duty to engage in a

meaningful dialogue with Petrusich and to request an IME or whatever additional evidence it deemed necessary to confirm or to deny Petrusich's assertion of cognitive impairment.  In light of Unum's structural conflict of interest, Plaintiff's showing of disability, the inaccuracies in Unum's review of the record, and the conflicting opinions between Petrusich's treating physicians and Unum's reviewing physicians, the Court concludes Unum's failure to conduct an IME raises questions about the sufficiency of Unum's review and supports a conclusion that Unum did not undertake the investigation of Petrusich's claim that was legally required under the circumstances.

**4.    Unum Failed to Analyze Whether Petrusich Could Perform Her Job**

As noted, the Plan defines disability as meaning "You are <u>limited</u> from performing the <u>material and substantial duties</u> of your <u>regular occupation</u> due to your <u>sickness</u> or <u>injury</u>."  AR at 140 (emphasis in original).

Petrusich argues Unum abused its discretion by failing to assess whether Petrusich's symptoms prevented her from performing her job.  Petrusich relies on *Heffernan v. Unum Life Ins. Co.,* 101 Fed. App'x 99 (6th Cir. 2004) to support her position.  In *Heffernan* Unum denied the claim on the basis that the claimant's "depression was stress-induced such that she could act as a litigator in a low-stress environment, or alternatively that her

departure from her litigation position at [her former] law firm

was a voluntary life-style choice."  The court disagreed.

> [S]uggesting that a litigation attorney who
> is prone to stress-induced mental illness
> might be able to function in an employment
> environment with less stress is akin to
> observing that a tight-rope walker with
> acrophobia would do well to avoid high
> places. The mental status of both likely
> would improve in the friendlier environments,
> but finding work would be challenging.

*Id.* at 107.

The Court finds *Heffernan* analogous to this case and the

court's reasoning persuasive.  Although Unum concluded Petrusich

was not disabled under the terms of the Plan, there is nothing in

the record indicating that Unum conducted an analysis to

determine whether Petrusich's condition prevented her from

performing the duties of her job.  Similar to Unum's assessment

in *Heffernan* that the claimant left work because of a "life-style

choice," here Unum attributed Petrusich's decision to leave her

job to what it perceived as a "job[-]specific conflict."  To

support its denial of her claim, Unum focused on the fact that

Petrusich had formed an LLC and was able to travel, to do yoga,

to meditate, and to participate in dragonboat racing.  AR 899

("The notes demonstrated that you were able to function in

recreational and personal activities. . . ." and "[t]he

psychiatrist review concluded that the medical information showed

you had a      job[-]specific conflict and you chose not to

26 - OPINION AND ORDER

return to your regular occupation."). *See also* Def.'s Mem. at 41-42; Def.'s Reply Mem. at 5; AR at 868. Unum did not, however, assess whether Plaintiff's symptoms prevented her from performing the duties required in her high-stress occupation.

Unum's failure to assess whether Petrusich was capable of performing her job is particularly troubling given that, as noted, Drs. Cleary and Grant specifically opined Petrusich was unable to return to work due to her symptoms and the high-stress nature of her job. The Court concludes Unum's failure to perform this evaluation is further evidence that it abused its discretion when it denied Petrusich's claim for benefits.

Based on its review of the record, the Court concludes Petrusich satisfied her burden to prove that she was disabled under the Plan. The Court further concludes that even under the most deferential abuse-of-discretion standard of review, Unum's denial of Petrusich's claim is not supported by the record: Unum performed a superficial and cursory review of Petrusich's claim, ignored evidence that supported Petrusich's claim of disability, and failed to undertake an adequate investigation of Petrusich's claim.

Accordingly, the Court concludes Unum abused its discretion when it denied Petrusich's claim.

**IV. Remand or Award of Benefits**

"Remand to the plan administrator is appropriate where that

27 - OPINION AND ORDER

administrator has 'construe[d] a plan provision erroneously' and therefore has 'not yet had the opportunity of applying the [p]lan, properly construed, to [a claimant's] application for benefits.'" *Canseco v. Constr. Laborers Pension Trust*, 93 F.3d 600, 609 (9th Cir. 1996)(quoting *Saffle v. Sierra Pac. Power Co. Bargaining Unit Long Term Disability Income Plan*, 85 F.3d 455, 461 (9th Cir. 1996).  In cases where the plan administrator has abused its discretion when denying a claim for disability that was supported by the record, however, courts have ordered payment of benefits on the ground that the administrator should not be given a second chance.  *See, e.g., Cooper v. Life Ins. Co. Of No. Amer.*, 486 F.3d 157, 172 (6th Cir. 2007)("Plan administrators should not be given two bites at the proverbial apple where the claimant is clearly entitled to disability benefits.  They need to properly and fairly evaluate the claim the first time around.").  In *Fleet v. Independent Federal Credit Union* the district court stated:

> If the procedure were to become routine, it would pose a serious risk of simply allowing 'Mulligans' to sloppy plan administrators -- at the expense of both the courts and plan participants and beneficiaries . . . . "It would be a terribly unfair and inefficient use of judicial resources to continue remanding a case to [the plan administrator] to dig up new evidence until it found just the right support for its decision to deny an employee her benefits."

No. 1:04CV0507DFHTAB, 2005 WL 1183177, at *3 (S.D. Ind. 2005)(quoting *Dabertin v. HCR Manor Care, Inc.*, 373 F.3d 822, 832

28 - OPINION AND ORDER

(7th Cir. 2004))

The situation here is not one in which the Plan Administrator failed to apply the plan provisions properly. Instead, as noted, even under the most deferential abuse-of-discretion standard of review, Unum's denial of Petrusich's claim is the result of a superficial and cursory review of the record and is unsupported by the record.

The Court, therefore, concludes it should not permit Unum to have another "bite at the apple" and that an award of benefits is appropriate.


<u>CONCLUSION</u>

For these reasons, the Court **GRANTS** Petrusich's Motion (#29) for Summary Judgement, **DENIES** Unum's Motion (#37) for Summary Judgment, and **ORDERS** judgment in favor of Petrusich for an award of benefits.  The Court further **DIRECTS** the parties to confer and to submit to the Court a form of judgment to be filed no later than December 6, 2013.

IT IS SO ORDERED.

DATED this 22nd day of November, 2013.


/s/ Anna J. Brown
_____
ANNA J. BROWN
United States District Judge


29 - OPINION AND ORDER